KESSLER, APPELLEE, *v.* METROPOLITAN LIFE INSURANCE CO., APPELLANT.

(Decided December 5, 1938.)

*Mr. C. H. Hock* and *Mr. George Cheney,* for appellee.

*Messrs. Holbrook & Banker,* for appellant.

LLOYD, J. On January 5, 1938, Mary A. Kessler commenced an action in the Court of Common Pleas to recover the sum of $1,000 on a policy of life insurance issued to her husband, Harry L. Kessler, in which she was named as beneficiary and which she alleged had matured by reason of the death of Mr. Kessler.

The denial by the insurance company of liability on the policy is based solely on the claim that Kessler

made certain representations in his application for insurance that were wilfully false, known to him when made to be false, and that, but for them, the policy would not have been issued. Kessler died on October 1, 1937. At the trial the jury returned a verdict in favor of Mrs. Kessler. From the judgment entered on this verdict the insurance company appeals to this court on questions of law.

The appellant insurance company claims that the trial court erred in refusing to direct a verdict in its favor and, having failed to do so, should have entered judgment in its favor notwithstanding the verdict because of the inconsistency therewith of certain special interrogatories proposed to and answered by the jury, and also that the court erred in sustaining objections to certain questions asked of witnesses by appellant and in its charge to the jury.

In part B of the application of Kessler for insurance, dated and signed by Kessler on June 30, 1937, among other questions and answers are the following:

"6. Present condition of health. *Good.*

"7. a. When last sick? *Never.*

"Month. Year.

   "b. Nature of last sickness. ———

   "c. How long sick? ———    * * *

"9. Any physical or mental defect or infirmity? If yes, give particulars. *No.* * * *

"16. Name and address of your usual medical attendant. *None.* * * *

"18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick and names of physicians. *No.*"

Section 9391, General Code, relates to when false answers to interrogatories made by applicant for life insurance shall bar the right of recovery thereon. By virtue of this section such answer or answers must have been wilfully false, fraudulently made, material to the risk, the inducement to the company to issue the

policy and without which the policy would not have been issued, and also it must appear that the agent or company had no knowledge of the falsity or fraud thereof.

There is sufficient conflict in the evidence as to whether the answers of Kessler as to his previous condition of health were wilfully false or fraudulently made to warrant the submission of these questions to the jury, if there was evidence tending to prove the other statutory requirements.

The interrogatories in question are:

"1. Do you find from the evidence that Harry L. Kessler was attended by a physician within five years prior to June 30, 1937? Answered: No.

"2. Do you find from the evidence that Harry L. Kessler was treated by a physician within five years prior to June 30, 1937? Answered: Yes."

Neither of these interrogatories, although the answers thereto are inconsistent with each other, relate to the ultimate facts enumerated in Section 9391, General Code.

The court permitted appellant to cross-examine a physician called by it as a witness who in the opinion of the court appeared to be hostile. Thereupon, counsel presenting to the witness a statement purporting to have been signed by him, the examination proceeded as follows:

"Q. In this statement you make the statement that you treated Harry L. Kessler from May 19, 1937, until his death.

"Mr. Cheney: We object.

"Q. And therefore you attended Mr. Kessler until his death?

"Mr. Cheney: We object.

"Court: He may answer.

"Mr. Cheney: Note exceptions.

"A. I would not call it attending, the fact that he was in my office.

"Q. Then you did treat him from May 19, 1937, until the date of his death?

"Mr. Cheney: We object.

"Court: The inquiry should be confined to the language of the application which uses the word 'attended.' Sustain the objection."

An offer of proof was made, followed later by:

"Q. The first time that you treated Harry L. Kessler was May 19, 1937?

"Mr. Cheney: We object.

"Court: Sustain the objection on the ground previously indicated, that it is too broad in view of the language of the application.

"Q. When did you first treat Harry L. Kessler?

"Mr. Cheney: We object.

"Court: Objection sustained."

This was followed by an offer to prove "that in the event Dr. Egger were allowed to testify as to this, he would say that he had treated Harry L. Kessler for gastritis and infected tonsils continuously from May 19, 1937, to the date of his death."

There would seem to be no such differentiating legal significance between "attending" and "treating" as would make objectionable the questions asked. Certainly treatment of a patient is more inclusive in meaning than attending, and is within the clear import of question No. 18 of the policy application. The information sought related to something more than a social call. Surely when a person has been treated by a physician, he has been attended by a physician and we think the court erred to the prejudice of appellant in thus limiting the testimony, the only objection thereto being as hereinabove indicated.

Whether the treatment given was in relation to some minor, inconsequential or temporary ailment is beside the point. The purpose of the inquiry was to find out what had been the condition of health of Kess-

ler and the nature of the professional attention, if any, received by him from the witness.

The only complaint made by appellant as to the charge of the court relates to the instructions to the jury as to what was meant by the word "attending" as used in the application. The court followed the interpretation thereof given as the reason for sustaining objections to the above-quoted questions and sought, by example, to illustrate its meaning and to say what would and what would not be "attending" within the meaning of the word as used in the application. It was the province and duty of the jury, under instructions of the court as to the law applicable to the issues involved, to determine from the facts and circumstances in evidence whether Kessler had been attended by a physician within the time designated in question No. 18 of the application, and the purpose of the information sought thereby, and in our judgment the instructions given in this regard were to say the least confusing and prejudicially erroneous.

The judgment is reversed and the cause remanded to the Court of Common Pleas for a new trial.

*Judgment reversed and cause remanded.*

Carpenter and Overmyer, JJ., concur.